FILED

12-29-09

DEC 2 9 2009 **NF**

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

AO 91 (REV.5/85) Criminal Complaint

AUSA Benjamin F. Langner (312) 353-2817

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

UNITED STATES OF AMERICA

v.

ROGELIO BARAJAS

**UNDER SEAL**
**CRIMINAL COMPLAINT**

CASE NUMBER **09 CR 1058**

MAGISTRATE JUDGE SCHENKIER

I, the undersigned complainant, being duly sworn on oath, state that the following is true and correct to the best of my knowledge and belief: In or about late August or early September 2008, at Dundee, in the Northern District of Illinois, Eastern Division, and elsewhere, ROGELIO BARAJAS defendant herein:

knowingly and willfully exported a defense article, namely, a Ruger .22 caliber rifle bearing serial number 351-46056, without first having obtained the required license from the United States government or other approval for such export;

in violation of Title 22, United States Code, Section 2778(b)(2) and (c). I further state that I am a Special Agent with Immigration & Customs Enforcement, and that this complaint is based on the facts contained in the Affidavit which is attached hereto and incorporated herein.

Signature of Complainant
AMBER WIGANT
Special Agent, Immigration & Customs Enforcement

Sworn to before me and subscribed in my presence,

December 29, 2009
Date

at Chicago, Illinois
City and State

SIDNEY I. SCHENKIER, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

UNITED STATES DISTRICT COURT          )
                                      )          ss
NORTHERN DISTRICT OF ILLINOIS         )

## AFFIDAVIT

I, AMBER WIGANT, being duly sworn, state as follows:

1.      I am a Special Agent with the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement, Office of Investigations, Chicago, Illinois. I am currently assigned to conduct investigations involving illegal exports and have served in this position since March 2008. My current responsibilities include investigating the illegal transfer of commodities, information, and services from the United States, which are regulated by the U.S. Departments of State, Commerce, and the Treasury.

2.      This affidavit is submitted in support of a criminal complaint alleging that Rogelio Barajas has violated Title 22, United States Code, Section 2778(b)(2) and (c). Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of a criminal complaint charging BARAJAS with knowingly and willfully exporting defense articles without obtaining the required license from the United States government, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the defendant committed the offense alleged in the complaint.

3.      This affidavit is based on my personal knowledge, as well as information provided to me by other law enforcement agents.

1

## *Applicable Law*

4. The Arms Export Control Act (AECA) authorizes the President of the United States to control the export of items designated as "defense articles" on the United States Munitions List and the issuance of export licenses for those defense articles. *See* 22 U.S.C. § 2778(a)(1). The task of designating items as "defense articles" is performed by the Department of State, in accordance with regulations that are promulgated by Department of State, Directorate of Defense Trade Controls ("DDTC"). *See* 22 U.S.C. § 2778 (a) (2) and 22 C.F.R. §§ 120.1(a) and 120.2. All items that are designated as "defense articles" are identified by category in a document, prepared by DDTC, that is known as the "Munitions List." 22 U.S.C. § 2278(a)(1) and 22 C.F.R. § 120.2. Category I of the Munitions List identifies firearms as defense articles, which includes revolvers, pistols, rifles, and carbines. A pistol is defined as a hand-operated firearm having a chamber integral with or permanently aligned with the bore. 22 C.F.R. § 121.9. A rifle is defined as a shoulder firearm which can discharge a bullet through a rifled barrel 16 inches or longer. 22 C.F.R. § 121.1. The Munitions List excludes other shotguns with barrels 18 inches or longer, BB, pellet, and muzzle loading (black powder) firearms. *Id.*

5. Any person who engages in the business of manufacturing, exporting, or importing any "defense article" is required to register with the DDTC. 22 U.S.C. § 2278(b)(1)(A) and 22 C.F.R. § 122.1(a). It is a crime for a person to willfully fail to

register with DDTC prior to engaging in the business of manufacturing, exporting, or importing any "defense article." 22 U.S.C. § 2778(c) and 22 C.F.R. §127.3.

6.      Any person who exports a "defense article" must get a valid export license from DDTC before the defense article is exported to another country. 22 U.S.C. § 2778(b)(2) and 22 C.F.R. § 123.  It is a crime for any person to willfully export a "defense article" to another country without obtaining an export license prior to exporting the article.  22 U.S.C. § 2778(c) and 22 C.F.R. §127.1(a)(1).

### Facts Supporting Probable Cause

7.      On or about September 3, 2008, a Ruger .22 caliber rifle, Serial Number 351-46056, was recovered by Mexican authorities in an abandoned vehicle in Morelia, Mexico. According to records obtained from GAT Guns in Dundee, Illinois, this rifle was purchased by defendant Rogelio BARAJAS at GAT Guns on or about June 4, 2008.  Based on the evidence set forth below, there is probable cause to believe that BARAJAS knowingly and willfully exported this rifle to Mexico without obtaining the required license from the United States government.

8.      According to records obtained from the Illinois State Police, since August 1, 2006, defendant Rogelio BARAJAS has purchased over 100 firearms of various type and caliber at guns stores in the Chicago area, including GAT Guns in Dundee, IL and Cabela's, in Hoffman Estates, IL.[1]  In that same time, according to records maintained by the

---

[1] The identification of Rogelio BARAJAS is based on: (1) the firearms listed herein were purchased on an Illinois FOID card in the name of Rogelio Barajas; (2) a salesman at a gun store where BARAJAS

Department of Homeland Security, BARAJAS crossed the border from Mexico into the United States at least 36 times.

9.      On November 7, 2007, ICE Special Agents interviewed Individual A, an employee of GAT Guns, who stated that during a conversation with BARAJAS in or about August 2007 regarding the location of BARAJAS's firearms, BARAJAS told him that he (BARAJAS) transported guns that he purchased in the United States to Mexico.[2]

10.      According to records obtained from the GAT Guns and Cabela's, between December 12, 2007, and December 14, 2007, BARAJAS purchased five firearms from GAT Guns and Cabela's, including three 12 gauge shotguns and two .22 caliber rifles.

11.      On or about December 15, 2007, while picking up certain of the firearms described above at GAT Guns, BARAJAS was presented with a standard GAT Guns Release and Hold Harmless Agreement that contained the following line:

> The export of firearms outside of the U.S. requires an approved export license from the U.S. Department of State. Some firearms accessories and firearm sight/optics will require an

---

picked up several of the firearms listed below identified BARAJAS from a driver's license photograph as the individual who picked up the firearms purchased in the name of BARAJAS; (3) an undercover agent posing as a gun store employee identified BARAJAS from a driver's license photograph as the individual to whom he explained the federal export licensing requirements; and (4) on multiple occasions, surveillance agents identified BARAJAS from a driver's license photograph as the individual who entered the gun store at the time that firearm purchases were made in the name of Rogelio Barajas. In addition, Illinois law requires gun stores to confirm the identity of the individual purchasing firearms when a firearm is picked up after purchase.

[2] The government initiated its investigation into Barajas because in approximately August 2007, ICE received information that a .22 caliber Beretta pistol was recovered by Mexican law enforcement authorities in Vera Cruz, Mexico, in 2003. A trace of the weapon by ATF agents revealed that it originally had been purchased by BARAJAS in 1992 at Midwest Sporting Goods in Plainfield, Illinois.

> export license from either the U.S. Department of Commerce or
> the U.S. Department of State. It is the firearms owner's
> responsibility to adhere to all U.S. customs reporting
> requirements as well as U.S. export laws and regulations.

BARAJAS initialed this line acknowledging the fact that he was aware of the license requirements for the exportation of firearms outside of the United States. BARAJAS was also verbally advised on this date of the license requirements of firearms for exportation outside of the United States in a recorded conversation with an undercover agent who was posing as an employee of GAT Guns.

12. On or about February 3, 2008, an employee at GAT Guns received multiple e-mails from BARAJAS, using the email address prbv1967@hotmail.com,[3] requesting price quotes for various brands of shotgun (*i.e.* Franchi, Benelli). The employee gave agents a print-out of the e-mail from BARAJAS which included a header with the IP address from which the email originated. A search of public sources indicates that the IP address associated with the origin of BARAJAS's e-mail is registered inside of Mexico. This indicates that BARAJAS was logging into his e-mail account from Mexico when he sent this correspondence.

---

[3] According to records obtained from Hotmail in June 2009, the e-mail address prbv1967@hotmail.com was subscribed to "Rogelio Barajas" in the country of "America/Chicago." Furthermore, as noted below, Barajas used this email account to communicate with and place orders for guns from employees of GAT Guns, and according to employees at GAT Guns, appeared in person to purchase the guns previously ordered via emails sent from this email account. On June 11, 2009, Magistrate Judge Brown approved a search warrant for BARAJAS'S MSN Hotmail account, prbv1967@hotmail.com. On August 21, 2009, Magistrate Judge Valdez approved a second search warrant for prbv1967@hotmail.com.

13.     On or about March 11, 2008, BARAJAS arrived at O'Hare International Airport aboard a flight from Guadalajara, Mexico. There is no corresponding record of BARAJAS exiting the United States. Based on my training and experience, this type of travel pattern indicates that BARAJAS traveled to Mexico by vehicle or on foot sometime between December 15, 2007, when he picked up weapons at GAT Guns in Dundee, Illinois, and March 10, 2008.[4] Upon his arrival into the United States, BARAJAS was escorted to the secondary inspection area for a bag examination. BARAJAS had a suitcase and an empty hard sided golf club case. Customs and Border Protection ("CBP") inspectors examined the suitcase and found that it contained papers with handwritten notes corresponding to firearm brands and firearm related items. The CBP inspectors observed that the golf club case was empty, but noted the odor of burnt gunpowder emanating from inside. When CBP officers questioned BARAJAS about the golf case, BARAJAS stated that he had used the golf case to carry tools to his father in Mexico.

14.     According to records obtained from the GAT Guns and Cabela's, between March 12, 2008, and March 20, 2008, BARAJAS purchased seven weapons including one .22 caliber pistol, four 12 gauge shotguns and two 20 gauge shotguns. On or about March 12, 2008, BARAJAS purchased a Benelli Cordoba 12-gauge shotgun, which he had inquired about via emails sent from prbv1967@hotmail.com. *See supra* ¶ 12. On or about March 20,

---

[4] The United States does not keep records of individuals or vehicles exiting the United States to Mexico. The United States does, however, keep records of all passengers who leave the United States aboard an outbound flight.

2008, BARAJAS purchased a Franchi 12-gauge shotgun, which he had inquired about via emails sent from prbv1967@hotmail.com. *See supra* ¶ 12.

15.     On or about April 18, 2008, BARAJAS arrived at Chicago O'Hare International Airport aboard a flight from Guadalajara, Mexico. There is no corresponding record of BARAJAS exiting the United States aboard an outbound flight. Based on my training and experience, this type of travel pattern indicates that BARAJAS traveled to Mexico by vehicle or on foot, and returned to the United States by airplane.

16.     According to records obtained from the GAT Guns, between April 21, 2008, and May 1, 2008, BARAJAS purchased nine weapons from GAT Guns, including two .243 caliber rifles, one .22 caliber pistol, four 12 gauge shotguns and a 20 gauge shotgun.

17.     On or about May 29, 2008, BARAJAS arrived at Chicago O'Hare International Airport aboard a flight from Morelia, Mexico. There is no corresponding record of BARAJAS exiting the United States aboard an outbound flight. Based on my training and experience, this type of travel pattern indicates that BARAJAS traveled to Mexico by vehicle or on foot, and returned to the United States by airplane.

18.     According to records obtained from the GAT Guns, on or about June 4, 2008, BARAJAS purchased a Ruger .22 caliber rifle bearing Serial Number 351-46056. Furthermore, between June 4, 2008, and August 17, 2008, BARAJAS purchased a total of eleven weapons from GAT Guns: six .22 caliber rifles (including the Ruger .22 caliber rifle bearing Serial Number 351-46056) and five .22 caliber pistols.

19.     According to an employee of GAT Guns, during a conversation between the employee and BARAJAS on or about August 4, 2008, BARAJAS inquired as to the viability of GAT Guns supplying firearm accessories (*i.e.* belts, vests) to BARAJAS in volume. BARAJAS explained to the employee that he was setting up a hunting store in Mexico.

20.     Customs and Border Patrol records reflect that on September 10, 2008, BARAJAS crossed the border from Mexico into the United States through the port of entry in Laredo, Texas, while driving a Jeep Grand Cherokee, Illinois license plate G69 6809.[5] There are no records indicating when or how BARAJAS left the United States. Based on my training and experience, this type of travel pattern indicates that BARAJAS traveled to Mexico by vehicle or on foot sometime between August 17, 2008, and September 10, 2008.

21.     In addition, as noted above, on or about September 3, 2008 – a week before BARAJAS reentered the United States – a Ruger .22 caliber rifle, Serial Number 351-46056, was recovered by Mexican authorities in an abandoned vehicle in Morelia, Mexico.  This rifle was purchased by BARAJAS at GAT Guns on or about June 4, 2008.

22.     Between October 1, 2008, and October 12, 2008, the following emails were exchanged between BARAJAS's e-mail account, prbv1967@hotmail.com, and an e-mail account subscribed to Individual B at venadeando@gmail.com:[6]

---

[5] According to records obtained from the Illinois Secretary of State, the Jeep Cherokee is registered to Rogelio BARAJAS at 2016 Devonshire Road, Waukegan, Illinois.

[6] Individual B's name also appears in the header to the emails.

Date: October 1, 2008
From: [Individual B] (venadeando@gmail.com)
To: Rogelio Barajas (prbv1967@hotmail.com)

> Pablo this mail is the good one delete the first one because it went out before i could finish it. What happened pablo how are you. I am sending you the attached the file with the prices of the cartridges. Lets see what we can move, and taking advantage of you going to the other side let's see if you can bring some boxes of the fearful 270 weatherby mag [boxes of .270 caliber ammunition for a Weatherby rifle],[7] i could care less if they are of 130, 140 or 150. What i want to do is fire a lot of shots with my rifle and we'll see what we can try over here.

> my chum the doctor told me if he was interested in "la mira" i hope they make the agreement.

> well have a good trip and let me know when you are coming back

Date: October 6, 2008
From: Rogelio Barajas (prbv1967@hotmail.com)
To: [Individual B] (venadeando@gmail.com)

> What's up buddy this is the #1432575663 bancomer PABLO ROGELIO BARAJAS VIVEROS [caps in original], as I was telling you we can settle later on I am interested in the rifle"…"32gr" if there is a 36 better we will be I touch take care thanks

---

[7] At various points in the Affidavit, I will offer my interpretations of certain quoted language in brackets. My interpretations of these conversations are based on my training and experience, my knowledge of the investigation to date, and the contents and context of the conversations, as well as prior and subsequent conversations.

Date: October 10, 2008
From: [Individual B] (venadeando@gmail.com)
To: Rogelio Barajas (prbv1967@hotmail.com)

Pablo I was not able to deposit for you, no screwing around, dude, the dollar is very expensive, and I acted like a jerk to see if it would go down but it turned out worse, I swear I got pale from the amount it went up. When are you coming back? To see if I have time to gather some money so that you can bring me something or if not I will wait.

It's screwed up how the dollar got and the euro is worse… [ellipse in original]

Well let's see if you can let me know to see what we can do.

No screwing now it is going to turn out more expensive right? About how much?

Take care jerk and have a good time

Date: October 10, 2008
From: Rogelio Barajas (prbv1967@hotmail.com)
To: [Individual B] (venadeando@gmail.com)

What's up man, well yes the fucking dollar is sky high and the tortillas and beans have fallen in value, well but what the hell, dude, we have to keep going. I am at what I told you, only now make the exchange at whatever it is when you deposit it if it was about 450 [dollars] in the past now it is going to be 600 [dollars] more or less depending on what it is per box and then until you have it until then I tell you what I need it if I need it, okay. Take care we will be in touch, I will leave here like next Monday in other words the 20th something can still be done.

Date: October 12, 2008
From: [Individual B] (venadeando@gmail.com)
To: Rogelio Barajas (prbv1967@hotmail.com)

OK so look let me see what the chaos turns into between now

10

and Thursday, to see if the fucking dollar goes down a bit and that this kind of exchange is not a big problem. It's good you're going to spend a few days over there, have a great time and I think that instead of the fucking weatherbys [rifle] bring a blonde instead, I need that one more than the fucking rifle if you want I will give it to you…

According to information obtained from public sources, the originating IP address of the computer from which the emails from venadeando@gmail.com were sent is located in Mexico.

23.     Based on my review of the above email correspondence and a review of the IP addresses associated with the computers from which these emails were sent, as well as my knowledge of this investigation and my training and experience, I believe that BARAJAS agreed to purchase firearms and firearm accessories for Individual B who is located in Mexico and referred to BARAJAS as having traveled out of Mexico.  Furthermore, based on the context of the email exchange and my training and experience, I believe that BARAJAS provided Individual B with an account number for Bancomer, a Mexican bank, to deposit funds for payment to BARAJAS.

24.     According to records obtained from the GAT Guns, between October 11, 2008, and October 21, 2008, BARAJAS purchased eleven weapons from GAT Guns: five .22 caliber rifles, four 12 gauge shotguns, and two pistols.  On October 21, 2008, BARAJAS purchased a Weatherby 12 gauge shotgun from GAT Guns.

25.     On or about October 24, 2008, BARAJAS crossed the border from Mexico into the United States through the port of entry in Laredo, Texas, while driving the Jeep

Cherokee. There are no records indicating when or how BARAJAS exited the United States. Based on my training and experience, this type of travel pattern indicates that BARAJAS traveled to Mexico by vehicle or on foot sometime between October 21, 2008, and October 24, 2008.

26.    According to records obtained from the GAT Guns, on or about December 26, 2008, BARAJAS purchased four weapons from GAT Guns, including three .22 caliber rifles and a .22 caliber pistol.

27.    On or about February 21, 2009, an e-mail was sent from the email address prbv1967@hotmail.com to the email address prbv1967@hotmail.com. The email included a list of abbreviations that, based on the contents and context of the email, my knowledge of this investigation and my training and experience, appear to correspond to firearms, firearm accessories, prices and nicknames of individuals for whom BARAJAS was purchasing firearms and firearm accessories. The email appears to be a shopping list that Barajas sent to himself. The text of the email was as follows:

| X3 | 900 | | ROBERTO 10 | COSAS 1500 |
|---|---|---|---|---|
| 3) 10/22 | 850 | 21 | MORO 10 | MX 3200 |
| MOSQUI | 400 | 11.5 | DEUDA 33 | BRYAN 1000 |
| BERI | 300 | 4.5 | CACHO 5.2 | BEBE 500 |
| MINI | 250 | 7 | M REYEZ 13 | ARM 3300 |
| WTRBY | 550 | 10 | CARRANZA 2 | ODANTE 500 |
| | | | CARPINTERO 4 | PEDIDOS 750 |
| | | | CERARDO 1.6 | YO    500 |

CORTINA .6

CARTRIDGES #22Y27

POWER CUTER LOWS

TELEPHONE BATTERY

RADIO SHAK 6 VOLTEOS FOCOS

CLIP NEXTEL MAS VATERIA NASCAR

LENTES HECTOR

According to information obtained from public sources, the originating IP address of the computer from which the email was sent is located in Mexico.

28.     On or about February 24, 2009, BARAJAS entered the United States at the Port of Entry (POE) at Laredo, TX in a 1997 Toyota Camry that was registered to him. BARAJAS was stopped twenty-nine miles north of the POE at a checkpoint set up by the United States Border Patrol.  A further inspection of his vehicle revealed a non-factory compartment, or "trap" compartment, just above the fuel tank.  The vehicle was seized and agents interviewed BARAJAS, who said that he had smuggled U.S. currency in that compartment. Agents then drove BARAJAS back to the POE in Laredo, TX, and BARAJAS reentered Mexico.

29.     According to records obtained from the GAT Guns and Cabela's, between March 30, 2009, and April 9, 2009, Barajas purchased at least 14 weapons from gun stores in Chicago, including seven of the firearms included on the February 21 shopping list (*See* ¶ 27).  For example, the February 21 shopping list included the abbreviation "X3." On April 4, 2009 Barajas purchased a Winchester Super X3 12 gauge shotgun at GAT Guns.  The

shopping list also included the abbreviation "3)10/22." On March 30, April 5 and April 9, 2009, BARAJAS purchased one Ruger 10/22 .22 caliber rifle (for a total of three 10/22 rifles) from gun stores in Chicago. In addition, between March 30, 2009, and April 9, 2009, BARAJAS purchased one .22 caliber rifle, one .30-06 caliber rifle, one .270 caliber rifle, two .22 caliber pistols, three 12 gauge shotguns, one 20 gauge shotgun and one 410 gauge shotgun.

30.     On or about May 29, 2009, an email was sent from hunnypot31@hotmail.com[8] to prbv1967@hotmail.com with the subject line "inventario" (inventory), and an excel file titled, "inventario de armas 22 de mayo de 2009.xls" (firearm inventory May 22, 2009) was attached to that email. This excel file contained a list of approximately 400 firearms, including at least 100 firearms that correspond with firearms that Barajas had purchased in the United States. According to information obtained from public sources, the originating IP address of the computer from which the email was sent is located in Mexico.

31.     On or about May 30, 2009, an email was sent from prbv1967@hotmail.com to prbv1967@hotmail.com. The email included a list of abbreviations that, based on the contents and context of the email, my knowledge of this investigation and my training and experience, appear to correspond to firearms, firearm accessories, prices and nicknames of individuals for whom BARAJAS was purchasing firearms and firearm accessories. The text

---

[8] Based on the contents of emails exchanged between hunnypot31@hotmail.com and prbv1967@hotmail.com, your affiant believes that the email account hunnypot31@hotmail.com belongs to a female acquaintance of BARAJAS.

of the email was as follows:

> aurelio: bsa telescopio 8x32x44 platinum target dot---conteron
>
> gover: conteron----boss
>
> rica: tenderizer # rz610938 $20 cabelas ---nosler 55 ct cabelas---22mag---
> headed
>
> #91s213713---nonheaded# 3d#91s212892 (10) cabelas
>
> infant clacce #91s 942924
>
> chino: marlin60# 443990b(5) $14---win490 mag#251030 (2) $20 NUMRICH
>
> FEDERICO: BROWNSNELL mira lyman #539-057-0064b---rampa #962-
> 020-219aa---hood# 962-026-00aa---mira Williams 28 mls #962-161-290aa
>
> Dodoli: lyman #539-017-001 $20
>
> Me: woodsman #387400a(b) $40 NUMRICH---rear iris #ans-9775-s $70
>
> champshooters---150 y 85 puntas.
>
> CABELAS
>
> BROWNSNELL
>
> SHOOTERS
>
> CHAMPSHOOTERS
>
> Gunpowder 4464—4350—3031
>
> :x box 360—shoes-sweatshirt
>
> Yn: huaraches #9—hand soap—advil—bread
>
> Bebe:

According to information obtained from public sources, the originating IP address of the

computer from which the email was sent is located in Mexico.

32.    From June 7, 2009, to June 16, 2009, BARAJAS picked up twelve firearms that

he had previously purchased from GAT Guns in Dundee, IL, and Cabela's in Hoffman

Estates, IL, including three .22 caliber rifles, one .270 caliber rifle, one .308 caliber rifle, one .22 caliber pistol, one .38 caliber revolver, and five 12 gauge shotguns.

33.     On June 11, 2009, the government sought and obtained an order from Chief Judge James F. Holderman requiring Sprint Nextel to provide, for a period of 30 days, all information, facilities, and technical assistance needed to ascertain the physical location of the cell phone utilizing phone number (773) 641-6779 ("**Target Phone 1**"), which BARAJAS was using at that time.[9]

34.     Between June 11, 2009, and June 29, 2009, information provided by Sprint Nextel indicated that **Target Phone 1** was located within Illinois.  Between June 29, 2009, and June 30, 2009, information provided by Sprint Nextel indicated that **Target Phone 1** traveled from Illinois to Laredo, TX.  Subsequent attempts to track **Target Phone 1** on July 1 through July 3 resulted in failures, which in your affiant's training and experience, indicates that BARAJAS crossed the border from the United States into Mexico on or about July 1, 2009.

35.     On or about August 29, 2009, BARAJAS picked up six firearms from GAT Guns in Dundee, IL and Cabela's in Hoffman Estates, including one .22 caliber rifle, one .270 caliber rifle, one .30-06 caliber rifle, one .22 caliber pistol, one .22 caliber revolver and

---

[9] On June 4, 2009, when BARAJAS purchased three weapons from GAT Guns, BARAJAS left the phone number 773-641-6779 as his contact information.  In addition, on June 4, 2009, BARAJAS placed an internet order to purchase a gun from Cabela's and again listed his contact phone number as 773-641-6779. Finally, according to an employee of Cabela's, on or about June 10, 2009, the employee called BARAJAS at 773-641-6779 to inform him that a firearm he had purchased via the internet had arrived.

one 12 gauge shotgun.

36.     On or about September 1, 2009, DEA Special Agent Amin Rosado received a phone call from BARAJAS. Rosado, who is assigned to the DEA office located in Laredo, Texas, was the DEA agent who interviewed BARAJAS when BARAJAS entered the United States on February 24, 2009, in a Toyota vehicle with a trap compartment. During the phone call, BARAJAS told Rosado that he (BARAJAS) was "in trouble up here" in Illinois and that he (BARAJAS) wanted to speak face to face with Rosado. BARAJAS also told Rosado that he (BARAJAS) would be traveling from Chicago to Laredo, Texas, in the next several days and wanted to speak to Rosado at that time.

37.     On or about September 3, 2009, Special Agent Rosado spoke with BARAJAS in person in Laredo, Texas. BARAJAS admitted that he had eight guns in Mexico, and claimed to use the guns for hunting purposes. SA Rosado questioned BARAJAS as to how he (BARAJAS) got the firearms into Mexico. BARAJAS stated that he would not tell SA Rosado how he got the guns to Mexico.

38.     On or about October 2, 2009, SA Rosado again met with BARAJAS in person in Laredo, Texas. BARAJAS said that he was stopped by border patrol officers at the Laredo, TX, point of entry in July 2009,[10] and escorted to the secondary inspection lane. BARAJAS told SA Rosado that he asked the border patrol officers why he was being inspected and the officer responded that it was because of an ATF lookout. SA Rosado

_____

[10] There are no corresponding CBP records of a border crossing by or investigative stop of BARAJAS.

asked BARAJAS why he thought the ATF was investigating him. BARAJAS stated that he owns and purchases a lot of guns. BARAJAS admitted that he owns approximately 40 rifles of .22, .30-06 and .308 caliber, several .22 caliber pistols and multiple 12 gauge and 20 gauge shotguns. BARAJAS told SA Rosado that he had purchased these weapons at GAT Guns, Cabela's, Bass Pro Shop, and Midway guns in Illinois.[11] BARAJAS stated that after purchasing these weapons in Illinois, he took these weapons to his home in Mexico via the International Bridge at the point of entry in Laredo, Texas. BARAJAS said that he has been transporting these firearms to Mexico little by little over a period of years. BARAJAS also stated he is a gun dealer and provided SA Rosado with a Firearm Owner Identification card (FOID) #56713019.[12]

39. On or about September 23, 2009, your affiant obtained a preliminary licensing determination certifying that the Ruger .22 rifle bearing serial number 351-46056 is a "defense article" within the meaning of 22 U.S.C. §2778 and requires a license from the Directorate of Defense Trade Controls for export to Mexico.

40. On or about September 24, 2009, your affiant obtained a licensing history report certifying that Rogelio BARAJAS has never applied for or obtained a license to export defense articles from the United States Department of Commerce or the United States

---

[11] According to records obtained from Bass Pro Shop, BARAJAS purchased two weapons from Bass Pro Shop in 2001. Your affiant is unaware of any records indicating that BARAJAS purchased weapons from Midway guns. However, according to records obtained from Midwest Sporting Goods, BARAJAS purchased weapons from Midwest Sporting Goods in 1992, 2000, 2003 and 2008.

[12] In order to be a firearm dealer in the United States, the individual must posses a Federal Firearms License (FFL). A FOID card does not grant the bearer the ability to legally sell firearms, only to handle and purchase firearms in the state of Illinois.

18

Department of State.

41.    Based on the facts set forth above, there is probable cause to believe that Rogelio Barajas knowingly and willfully exported a defense article, namely, a Ruger .22 caliber rifle bearing serial number 351-46056, without obtaining the required license from the United States government, in violation of Title 22, United States Code, Section 2778(b)(2) and (c).

FURTHER AFFIANT SAYETH NOT.

AMBER WIGANT
Special Agent,
Immigration & Customs Enforcement

SUBSCRIBED AND SWORN to before me
this 29th day of December, 2009.

SIDNEY I. SCHENKIER
United States Magistrate Judge